# WHEELING.

## TRADER v. JARVIS et al.

Submitted June 18, 1883—Decided December 8, 1883.

1. A father having a title-bond for real estate purchased by him, endorsed thereon an absolute assignment to his two sons, they at the same time becoming his sureties on a bond to S.; the said real estate is subsequently sold by the father, the sons uniting in the written contract of sale, to a third party and the title-bond is then assigned by the father and sons to the purchaser and it and the possession of the real estate are delivered to him and he paid the purchase-money. During these transactions and until after said sale one of the sons was a minor. After this minor son becomes of age he brings his suit in equity to disaffirm said sale as to one moiety of said real estate and to have the same decreed to him. The facts proved and the circumstances establish that the assignment of the title-bond was made and intended simply as an indemnity to the sons as the sureties of the father on said debt to S., and that by a provision in the contract of sale the purchaser bound himself to pay and did pay said debt, and thereby the sons were released from their liability as such sureties. HELD :

The said assignment to the sons must be treated as a contract in the nature of an equitable mortgage, and when the said debt to S. was satisfied it became inoperative and the beneficial interest in the real estate re-vested in the father and passed from him by said contract of sale to the purchaser, and the son's suit was properly dismissed. (p. 107.)

2. Delay in the assertion of a right, unless satisfactorily explained, even where it does not constitute a positive statutory bar, operates in equity as an evidence of assent, acquiesence or waiver; and especially is such the case in suits to set aside transactions on account of fraud or infancy. Laches and neglect are always discountenanced by a court of equity. (p. 108.)

Snyder, Judge, furnishes the following statement of the case:

By written contract or title-bond, dated May 18, 1858, Abner Snider sold to Samuel Trader two lots, Nos. 7 and 8, in the town of Grafton, Taylor county, for one thousand two hundred dollars, the last payment of which was for two hundred and eighty dollars, payable April 1, 1859, and the said Snider bound himself to convey said lots to said Trader upon the payment of the purchase-money. On said title-bond there are two endorsements, the first is an assignment thereof by said Samuel Trader to Alfred and George A. Trader, dated December 20, 1858, and the second is an assignment thereof by said Alfred and George A. Trader to G. E. Jarvis dated February 16, 1860. And by deed, dated January 19, 1859, between said Samuel, Alfred and Geo. A. Trader of the first part and Daniel K. Shields, trustee, of the second part, the said parties of the first part, after reciting therein that said Samuel was, on December 20, 1858, indebted to Wm. H. Shields one thousand five hundred and seventy-two dollars for which he had on that day, with said Alfred and George A. as his sureties, executed to said Shields a note payable nine months after date, and, being desirous to indemnify said Alfred and George A. as such sureties had on that day, after the execution of said note, assigned to them said title-bond and the said Samuel, Alfred and George A. Trader, being willing to secure said note of one thousand five hundred and seventy-two dollars, conveyed to said trustee said lots with a brick house then being erected thereon by said Samuel, to secure the payment of said note to said Shields, with authority to the trustee to sell said property upon default in the payment of said note and to apply the proceeds of sale first to the discharge of said debt and to pay the surplus, if any, to said Samuel. This deed is duly acknowledged and was recorded in said county February 2,

1859. The said Wm. H. Shields afterwards assigned the said note of one thousand five hundred and seventy-two dollars to Joseph Cather.

The said Samuel, Alfred and George A. Trader, on February 16, 1860, entered into a written agreement with Grandville E. Jarvis by which they sold to said Jarvis said lot No. 7, with the brick house erected thereon by said Samuel, for the sum of five thousand four hundred and five dollars to be paid as follows: six hundred dollars paid in jewelry at the time, twenty-five dollars cash, one hundred and seventy-five dollars in sixty days, one hundred and fifty dollars in store goods as called for and one thousand nine hundred and twenty-seven dollars and fifty cents to Joseph Cather and Daniel Blocher in satisfaction of the aforesaid Shields trust-debt assigned to Cather and another trust-debt of two hundred and fifty-three dollars and thirty-two cents due to said Blocher, all of which payments aggregating two thousand eight hundred and seventy-seven dollars and fifty cents and leaving of the said five thousand four hundred and five dollars a balance of two thousand five hundred and twenty-seven dollars and fifty cents as to which latter sum said agreement provides as follows:

" The said sum of two thousand five hundred and twenty-seven dollars and fifty cents is to be paid in the following time and manner—that is to say, the said sum of two thousand five hundred and twenty-seven dollars and fifty cents is to be paid in jewelry, one half in watches and the other half in other jewelry such as Jarvis now has on hand, at the New York bill prices as stated in Jarvis's invoice of the same; but as there may be some claims against the parties of the first part affecting said house and lot not known to said Jarvis, it is agreed by the parties hereto that the jewelry for the payment of the last named sum shall be selected by the parties of the first part, or either of them, from the jewelry now on hand by Jarvis, and put in a box, the box sealed and placed in the hands of Samuel P. Kemble, to be delivered to the parties of the first part whenever Jarvis shall be satisfied that all claims against the parties of the first part affecting in any way the said house and lot shall be removed, satisfied or paid off, and in the event the parties cannot agree in the

last matter, each shall select an attorney to decide the matter, and if said attorneys can't agree they shall call in a third attorney, and they shall then decide the matter; said Jarvis to be entitled to the rent from Robinett of said house and lot from the 13th day of December, 1859, and to have possession of the same, including the store, from and after the present time.   And the said parties of the first part do acknowledge Moses J. Robinett, now in possession of said house and lot, to be the tenant of said Jarvis.   The foregoing payments to be made by Jarvis upon the order of Alfred J. Trader and George A. Trader or either of them, and not otherwise.   And the parties of the first part do assign to said Jarvis the title-bond of Snyder, and they also bind themselves to make, or cause to be made, to Jarvis a good and sufficient deed in fee simple, with covenants of general warranty, within twelve months from this date, or sooner if possible, for lot No. 7."

Pursuant to said agreement, and on the same day the assignment, before mentioned, was endorsed on said title-bond and the same delivered to said Jarvis.   Possession and control of the said house and lot No. 7 was at once taken by said Jarvis and he has so continued in the possession and control thereof ever since.   Jarvis soon thereafter paid said sums of twenty-five dollars and one hundred and seventy-five dollars in money and one hundred and fifty dollars in goods.   On February 27, 1860, the said Samuel, Alfred and George A. Trader selected jewelry from the stock of said Jarvis to the amount of three thousand one hundred and forty dollars and sixteen cents and made an inventory thereof, part of which to the amount of six hundred and two dollars and forty-one cents was then delivered to them as the down payment provided for in the said agreement, and the residue valued at two thousand five hundred and thirty-seven dollars and seventy-five cents was then and there placed in a box, sealed up and put in the hands of Samuel P. Kemble to be kept and disposed of by him according to the aforesaid agreement.

Afterwards, on May 4, 1861, at the request of said Traders they were permitted to take and did take from said box jewelry to the value of four hundred and two dollars and said box with the remainder of the jewelry in it was then again

sealed and left in the possession of said Kemble. Jarvis paid off the said trust-debt to Daniel Blocher.

The said Shields debt not having been paid and the trustee having died his personal representative acting as trustee, at the instance of Joseph Cather, assignee, sold said house and lot No. 7 under the trust-deed, on February 24, 1864, and said Jarvis became the purchaser at the price of three thousand one hundred dollars, out of which said Shields trust-debt was fully paid; and the said trustee by deed, dated July 13, 1864, conveyed said house and lot to said Jarvis. This deed was duly recorded August 19, 1869, in said county.

The aforesaid two hundred and eighty dollars due from Samuel Trader to Abner Snider on the purchase of said lots being unpaid when Jarvis purchased said lot No. 7, the said Jarvis afterwards paid the same to said Snider and at the request of said Samuel said Snider and wife, by deed dated September 1, 1866, conveyed said lot to said Jarvis.

In this condition of affairs the said George A. Trader, on July 6, 1869, brought this suit. In his bill he alleges that on December 20, 1858, when said title-bond for said lots, Nos. 7 and 8, was assigned to him and Alfred Trader by said Samuel Trader, both he and Alfred were under the age of twenty-one years, that he was also an infant when he signed said Shields note, when he executed the said trust-deed of January 19, 1859, to secure said note, and when he made the agreement of Febuary 16, 1860, for the sale of said house and lot No. 7 to said Jarvis; and that he is not bound by said writings or any of them; that no part of said five thousand four hundred and five dollars, the consideration for said house and lot, was ever paid to him by said Jarvis, and that he is, therefore, entitled to have said sale set aside and one moiety of said house and lot assigned to him, and recover from said Jarvis one moiety of the rents and profits of said property during the time he has had the use and possession of same. The said Jarvis, Samuel Trader, Alfred Trader, W. H. Shields, Joseph Cather and others were made defendants to said bill.

The defendants, Jarvis, Shields and Cather answered the bill and deny that the plaintiff ever had any real title to or interest in said property. They aver that said title-bond was

assigned to plaintiff, and said Afred Trader by said Samuel Trader, simply as a pledge or mortgage to indemnify them as his sureties on said Shields note, and that said note having been satisfied without loss to them, the said assignment, if it ever had any validity, thereby became inoperative and void. The defendant, Jarvis, also avers that the jewelry placed in the box is still there as it was when put in the box and he is willing that the court may take possession of it and dispose of it according to the agreement of the parties as contained in said agreement of February 16, 1860, or otherwise as to it may seem proper.

Replications were filed to said answers, depositions taken, and the cause coming on to be heard, the court, on July 21, 1879, entered a decree dismissing the plaintiff's bill with costs. From this decree the plaintiff obtained an appeal to this Court.

*John T. McGraw* for appellant.

*J. W. Mason* and *James Morrow, Jr.*, for appellee.

SNYDER, JUDGE:

The proof shows that the appellant was under twenty-one years of age at the time said title-bond for said lots was assigned to him and Alfred Trader and that he did not become twenty-one years of age until August 22, 1862, after the agreement of February 16, 1860, for the sale of said property to the defendant, Jarvis. The important question then is, whether or not the plaintiff by said assignment acquired any beneficial interest in said property of which he could not be divested without a conveyance from him? For it is conceded that if such was the fact the appellant did not by said agreement of February 16, 1860, divest himself of the title to said property. If his title was unconditional no act of his during his minority could divest or transfer it.

The trust-deed of January 19, 1859, from appellant and Samuel and Alfred Trader to secure the Shields debt expressly states that said assignment was made " to indemnify and save harmless said Alfred and George A. as such sureties," that is, as sureties of the said Samuel Trader on said

14

Shields note. It is true, the appellant being a minor when he executed said trust-deed, he is not bound by this statement in it, but the said Samuel, who also executed it, is concluded and estopped by said statement and he will not be heard to contradict it. His evidence, then, so far as it attempts to give a different and inconsistent version of the object and effect of said assignment, must be wholly disregarded. Isaac A. Morris, the attesting witness to said assignment, who testifies that he wrote the Shields note, which was signed by Samuel Trader with Alfred and appellant as his sureties, states in his deposition, that immediately after the execution of said note the said Samuel assigned said title-bond to Alfred and appellant in his presence to secure them as his sureties on said note and for no other consideration or purpose, and no mention was made of any sale or debt due from said Samuel to the appellant or Alfred who are the sons of said Samuel. Alfred testifies, that according to his recollection he and his brother never paid any money for said assignment, that they were acting in the matter as friends of their father and he never gave it much attention or felt any interest in it. The appellant testifies that he and his brother worked for their father and the assignment was made "to secure to us what he owed us so we would not lose the debt." He also says, they gave their father a note for two thousand dollars and specifies some work done at different times for their father which he says satisfied the note, but the work thus specified was all done while appellant was under age and without any contract and therefore could not create any indebtedness against the father. *Hall* v. *Finch*, 29 Wis. 278; *Stansbury* v. *Stansbury*, 20 W. Va. 23. This is the substance of the direct testimony in respect to the purpose and consideration of said assignment. The evidence of the father, said Samuel, is not materially different from that of his sons, but for the reason before stated it cannot be regarded. It further appears, however, that neither Alfred nor appellant had any means or estate and that in fact no consideration was paid by either of them for said assignment. It is not satisfactorily shown that said title-bond was ever delivered to, or that it was at any time in the possession of, appellant or said Alfred. Appellant says, he thinks his brother took it to the

clerk's office, but the latter says he has no recollection of ever having had it. It is certain, however, that at the time of the sale to Jarvis it was in the possession of the father and he then delivered it to Jarvis. It affirmatively appears that the father up to the time he made the sale to Jarvis had the absolute use and control of the property and neither appellant nor his brother, Alfred, ever had the possession of it or set up any claim to it; and the said Alfred does not now claim to have any interest in it or the proceeds of the sale.

Viewing the whole transaction in the light of this evidence and the surrounding circumstances, it seems to me, that at the time of the sale to Jarvis, Samuel Trader, the father, was the real and actual owner of the property, and that neither the appellant nor his brother ever had any title to or interest in it. If either of them had, at any time, any claim to the property it was merely by way of an equitable mortgage to indemnify them against any loss they might sustain by reason of being sureties of their father on the said Shields note. The appellant, at the time said note was given, being a minor, was not legally bound by it, and so whether the said note was in fact satisfied or not he could never have sustained any loss by reason of his giving it. But in fact said note has been fully discharged. The very agreement which the appellant is now seeking to repudiate and avoid, provided for the payment of said note and the release of the makers. And under said agreement Jarvis has fully paid and discharged said note. The condition upon which said assignment was made to appellant, having been performed, the property at once re-vested in the assignor, the said Samuel Trader, and by his agreement and sale of February 16, 1860, passed to the appellee, Jarvis.

It is immaterial that said assignment is, on its face, unconditional. The law is well settled in this State and elsewhere, that a deed or other written instrument, though absolute on its face, may be shown by the surrounding circumstances and parol evidence, that it was intended by the parties as a mortgage or security. *Lawrence* v. *DuBois*, 16 W. Va. 443; *Vangilder* v. *Hoffman*, 22 *Id.* 1.

There is another consideration which tends greatly to confirm the conclusion reached in this cause. The appellant

become of full age nearly seven years before he commenced this suit. His deposition was taken and he does not attempt to give any reason or excuse for this long delay. Delay in the assertion of a right, unless satisfactorily explained, even where it does not constitute a positive statutory bar, operates in equity as an evidence of assent, acquiescence or waiver— *Pusey* v. *Gardner*, 21 W. Va. 469; and especially is such the rule in suits to set aside transactions on account of fraud or infancy. A court of equity, which is never active in relief against stale demands, will always refuse relief where the party has slept upon his right and acquiesed for a great length of time. Nothing can call into activity this Court but conscience, good faith and reasonable diligence. Where these are wanting the Court is passive and does nothing. Laches and neglect are always discountenanced. *Smith* v. *Clay*, 2 Ambler 645; *Doggett* v. *Helm*, 17 Gratt. 96.

The said agreement of February 16, 1860, provides that the payments, therein set forth for the property, shall "be made by Jarvis *upon the order* of Alfred J. Trader and George A. Trader, or either of them, and not otherwise." This direction, of course, has no reference to the payment of the Shields and Blocher debts, because the agreement expressly provided that Jarvis should pay these directly to said creditors. All the other payments seem to have been made by Jarvis according to said direction except the jewelry in the box deposited with Samuel P. Kemble. This appears to be still on hand and undisposed of. The appellant by this clause of said agreement may have some interest in said box of jewelry, since it is to be paid *on his order*, though it does not declare that it shall be paid to him or transfer any part of it to him. I think, therefore, the circuit court, instead of dismissing the plaintiff's bill absolutely should have done so without prejudice to the right of the plaintiff by any proper suit or proceeding to sue for and recover any interest he may have in said box of jewelry under said agreement of February 16, 1860. In that respect the said decree of the circuit court is now modified and corrected.

For the foregoing reasons I am of opinion that the decree of the circuit court of July 21, 1879, should be modified and corrected in the manner indicated, and as so modified and

corrected should be affirmed with costs and damages to the appellee, Jarvis.

MODIFIED AND AFFIRMED.