# CHARLESTON.

## DUFFIELD v. BUTLER.

(LUCAS, President, absent.)

Submitted January 15, 1891.—Decided January 24, 1891.

PRESUMPTION.

> A party holding a title-bond for a tract of land assigned it to another party in consideration of the assignment of a debt of three hundred dollars of a third party, two hundred and twenty five dollars of which is conceded to have been paid to the person who assigned the title-bond in her lifetime. She lived seventeen years after its assignment without asserting any claim for any balance unpaid to her. Her administrator sues to enforce a vendor's lien for a balance of seventy five dollars and interest thereon. He does not produce any note or bond of said third party, and said third party is also dead. The widow of said third party swears that he was able to pay, and did pay, said debt. Under these circumstances, it seems proper to treat the debt as paid, and to refuse the relief prayed for.

*J. M. Hamilton* for appellants, cited 26 W. Va. 741; 21 W. Va. 124; 10 W. Va. 59.

*W. E. R. Byrne* for appellee, cited 6 W. Va. 36; 10 W. Va. 662, 675; Code, c. 98.

ENGLISH, JUDGE :

This was a suit in equity, brought by James G. Duffield, administrator of the estate of Martha S. Cadle, against Oliver M. Butler, R. A. Butler and James M. Moore, in the Circuit Court of Clay county, and the bill appears to have been filed at the June rules, 1888. The material allegations of the bill are that the plaintiff's intestate, Martha S. Cadle, departed this life intestate some time in the year 1887, and that plaintiff was duly appointed and qualified as administrator of her personal estate in the county of Clay; that on the 11th day of February, 1867, she purchased from the defendant James M. Moore a certain tract

of land situate in said county, and on that day said Moore executed to her his title-bond therefor, binding himself to make her a deed with covenants of special warranty for said tract of land, and that the purchase-money therefor was shortly thereafter paid in full, and that several years after the execution of said title-bond as aforesaid (about the year 1870) and while the legal title to said land was yet in the said Moore, the said Martha S. Cadle, by indorsement upon said title-bond, assigned to the defendant O. M. Butler the benefit of her said purchase, in consideration whereof the said O. M. Butler agreed to pay to said Martha S. Cadle the sum of three hundred dollars, and it was at the time expressly agreed that the legal title to said land should rest where it then was, in said Moore, until said three hundred dollars should be paid in full, and that upon payment in full thereof the said Cadle would cause the said Moore to convey the said land to said O. M. Butler direct; that a very short time after the assignment aforesaid the said O. M. Butler became insolvent, and availed himself of the bankrupt law, and, being unable to hold property in his own name, he fraudulently assigned said title-bond to his son, the defendant R. A. Butler, who was at that time a youth about fourteen years of age, who had nothing to pay, and who in fact paid nothing for said assignment; that immediately after his purchase from Martha S. Cadle as aforesaid the said O. M. Butler was put in actual, peaceable possession of said land, which he has ever since held, and now holds, notwithstanding the said fraudulent transfer of the equitable title thereto to his said son, R. A. Butler; that a portion of said purchase-money which was to be paid by said O. M. Butler to the said Cadle to wit, two hundred and twenty five dollars, has been paid, but the residue, seventy five dollars, with its interest, and the interest accruing for several years on the entire three hundred has never been paid; that about three years before the suit was brought the said Moore drew up and executed a deed purporting to convey to O. M. Butler the interests of both said Moore and R. A. Butler in said land, but that said deed never has been recorded, but plaintiff alleges that he is informed that said deed contained no provision for the pay-

ment of the purchase-money remaining unpaid as aforesaid; that said assignment of the equitable title to said land from said O. M. Butler to R. A. Butler as aforesaid was made with the intent to hinder, delay and defraud his intestate in the assertion of her claim against said land for the unpaid purchase-money, and that the conveyance from said Moore to the said O. M. Butler of the legal title to said land, knowing, as said Moore did, that said purchase-money had not been paid, was unauthorized and therefore illegal; and he prays that said assignment from O. M. Butler to R. A. Butler be held fraudulent, so far as it affects the plaintiff's claim, and that the same may be held null and void, and that said conveyance from the defendant J. M. Moore to the defendant O. M. Butler be set aside, and that the plaintiff's claim of seventy five dollars with interest, and also the accrued interest on the balance of the purchase-money before payment, may be decreed a lien upon said land, and that the same may be sold to satisfy said lien and costs of said suit.

The defendants O. M. Butler and R. A. Butler each demurred to the plaintiff's bill, and filed their separate answers thereto, in which they admit that Martha S. Cadle, about the year 1867, purchased from James M. Moore, and paid for the tract of land containing one hundred acres in the bill mentioned, but say that the title-bond for the same, in consideration of three hundred dollars, was assigned to R. A. Butler by said Martha S. Cadle, and not to O. M. Butler, as alleged in the bill, which sum of three hundred dollars was taken by said Martha S. Cadle in a claim for three hundred dollars, assigned to her, on one William S. Hall in full satisfaction and discharge of said three hundred dollars; and they allege that said claim was taken by Martha S. Cadle on said William S. Hall at her own risk, and without recourse or responsibility upon them or either of them; and they further allege that said sum of three hundred dollars was fully paid to said Martha S. Cadle in her lifetime by said William S. Hall; and they deny the allegation that the legal title should rest in said James M. Moore until said three hundred dollars should be paid in full.

The defendant O. M. Butler also denies that he was to receive a deed for said land, or that he fraudulently assigned said title-bond to his son, R. A. Butler, but charges that the same was assigned to the defendant R. A. Butler by said Martha S. Cadle; and he denies all charges of fraud made against him in plaintiff's bill, or that said title-bond was assigned to R. A. Butler with intent to hinder, delay and defraud his creditors, Martha S. Cadle or the plaintiff in any manner.

The defendant R. A. Butler also denies all fraud or intent to defraud the plaintiff or his intestate.

The defendant J. M. Moore also answered the plaintiff's bill, admitting the purchase by Martha S. Cadle from him on the 11th of February, 1867, of the tract of one hundred acres, described in plaintiff's bill, and that the purchase-money therefore had been fully paid; that he has continued to hold the legal title since said sale, at the request of Martha S. Cadle, who notified him not to convey to Butler until the purchase-money was paid; that by his contract he was to warrant specially the title to said tract; and he files with his answer a deed for said one hundred acres of land, conveying the legal title to R. A. Butler, which he asks may be held as an escrow, subject to the order of the Court.

On the 14th day of May, 1890, the cause was heard upon the demurrer thereto, and upon the separate answers of O. M. Butler, J. M. Moore, and R. A. Butler, which were replied to generally, upon the exhibits filed and depositions taken by both plaintiff and defendants, and the court decreed that the defendant O. M. Butler do pay to the plaintiff one hundred and sixty two dollars with interest from the date of said decree, the same being the amount of the debt, seventy five dollars, mentioned in plaintiff's bill with interest from June 30, 1870, which debt and costs were decreed a lien for the purchase-money on said tract of land; and it was further ordered that, unless the said O. M. Butler should pay to plaintiff said sum and interest and costs, a commissioner therein appointed was directed to advertise and sell said tract of land upon the terms therein prescribed; and from this decree the defendant O. M. Butler and R. A. Butler obtained this appeal.

One of the questions raised by demurrer to the plaintiff's bill is whether the plaintiff according to his own showing has used that diligence in the assertion of his claim, or whether his intestate had used such diligence, as should be regarded as consistent with the rules of equity. The purchase of this tract of land appears from the allegations of the bill to have been made by Martha S. Cadle on the 11th day of February, 1867, and she assigned the title-bond, which she obtained from James M. Moore for the same, to O. M. Butler, in 1870. She departed this life in 1887, and the plaintiff was appointed her administrator some time in the same year, and the bill in this case was not filed until June rules, 1888. It is true that the assignor of the equitable title under the circumstances set forth in the bill would have the right to assert her vendor's lien against the land for the unpaid purchase-money (see *Day* v. *Hale*, 22 Gratt. 146 ; also *Beirne's Ex'rs* v. *Campbell*, 4 Gratt. 125) ; and upon the facts stated in the bill the statute of limitations would not apply, and the demurrer was properly overruled. When, however, we look further, and take into consideration the facts alleged in the answers and the proofs in the cause, the question again suggests itself whether the plaintiff's intestate has not been guilty of such laches in the assertion of her claims as would prevent her from being heard through her personal representative in a court of equity. R. A. Butler, in his answer, claims that said title-bond was assigned directly to him by said Martha S. Cadle for a valuable consideration, to wit, three hundred dollars, which sum was paid to and received by Martha S. Cadle in a note for that amount by William S. Hall, which note was received by her in full discharge and satisfaction for said three hundred dollars ; and he denies the allegation in plaintiff's bill that said three hundred dollars has not been fully paid, or that seventy five dollars and its interest remain unpaid. James M. Moore, in his deposition, states that in December, 1878, said Hall had paid said Martha S. Cadle two hundred and twenty five dollars on the land, and that he saw said title-bond on that day, and it was assigned to R. A. Butler, without date. Mrs. Margaret Hall, in her deposition, when asked, "Was William S. Hall or

was he not financially able to pay this debt of three hundred dollars at any time after contracted?" answered, "He was able to pay it, and did do it." She also states that said Hall was her husband, and that he died in 1877. J. W. Lyons, another witness, states that he was at Martha S. Cadle's at one time, and she claimed a debt or residue of a three hundred dollar debt of twenty five dollars or thirty five dollars. He did not know which, but it did not exceed thirty five dollars. She claimed that that amount was coming from W. S. Hall to her. It appears that this claim or debt against William S. Hall was transferred to Martha S. Cadle at the same time that said title-bond was assigned to R. A. Butler, which the plaintiff, in his bill, states was in the year 1870; and no good reason is shown why said Martha S. Cadle did not proceed at once to collect said debt from said W. S. Hall, or, if he was found to be insolvent, why she could not have proceeded to enforce her vendor's lien against said tract of land. She, however, delayed the assertion of her claim for seventeen years, until her death occurred in 1887, and her administrator (the plaintiff) who was appointed in the same year, failed to bring this suit until June, 1888.

In the case of *Trader* v. *Jarvis*, 23 W. Va. 108, SNYDER, J., delivering the opinion of the court, says: "Delay in the assertion of a right, unless satisfactorily explained, even where it does not constitute a positive statutory bar, operates in a court of equity as an evidence of assent, acquiescence or waiver; and especially is such the rule in suits to set aside transactions on account of fraud or infancy. A court of equity, which is never active in relief against stale demands, will always refuse relief where the party has slept upon his right, and acquiesced for a great length of time. Nothing can call into activity this Court but conscience, good faith and reasonable diligence. Where these are wanting the court is passive and does nothing." Laches and neglect are always discountenanced. Referring to *Smith* v. *Clay*, 2 Amb. 645; *Doggett* v. *Helm*, 17 Gratt. 96. And in the case of *Trader* v. *Jarvis, supra,* it will be perceived that the appellant delayed only seven years after attaining his majority before commencing his suit. Also in

the case of *Pusey* v. *Gardner*, 21 W. Va. 470, point 6 of syllabus, this Court held that, "even where there is no absolute bar from the lapse of time or by the statute of limitations, it is a principle of courts of equity not to take cognizance of an equitable claim after a great lapse of time, and where, from the death of parties and witnesses, there is danger of doing injustice, and there can no longer be a safe determination of the controversy." See *Harwood* v. *Railroad Co.*, 17 Wall. 81.

It appears in the case under consideration that William S. Hall, against whom the debt existed of three hundred dollars that was transferred to Martha S. Cadle, departed this life in the fall of 1877, about seven years after said Martha S. Cadle became the owner of said claim, and Martha S. Cadle herself died about a year before the institution of this suit. Thus the two parties and witnesses who could have best explained what portion of this purchase-money had been realized from said three hundred dollar claim assigned as aforesaid are dead, and, by reason of the delays and laches of the plaintiff's intestate, we are deprived of the evidence of those who were best acquainted with the facts, and are left to grope for the truth among the testimony of witnesses who are poorly informed, and who detail their recollections of circumstances and transactions, which are necessarily confused and uncertain by reason of the length of time since they occurred. When this is the case, there is "danger of doing injustice, and there can no longer be a safe determination of the controversy;" and the circumstances surrounding the case under consideration exemplify the wisdom of the rule which has been adopted by our courts to refuse relief where a party has shown want of reasonable diligence, and slept upon his rights. Margaret Hall, the wife of William S. Hall, states in her deposition that her husband was able to pay this three hundred dollar debt, and did do it, but she does not state how or when; and William Lyons says he "was there at Martha S. Cadle's at one time, and she claimed a debt, or a residue of a three hundred dollar debt, of twenty five dollars or thirty five dollars, I don't know which, but it did not exceed thirty five dollars. She claimed that amount was coming from

William S. Hall to her"—but he does not state when this was, and he is uncertain as to the amount. The note or claim against William S. Hall is not produced, and it is difficult to determine how the court below arrived at the conclusion that seventy five dollars, with interest from June 30, 1870, was still due the plaintiff's intestate upon said purchase-money.

I am led to the conclusion that this is one of those cases in which "a party that does not speak when he should speak will not be heard in a court of equity to speak when he would speak," and that under the circumstances of this case, after so much delay, the death of parties and the uncertainty of arriving at the true facts, it was error in the court below to decree in the plaintiff's favor.

The decree complained of, rendered on the 14th day of May, 1890, must be reversed, and the plaintiff's bill must be dismissed with costs to the defendants.

REVERSED. DISMISSED.