# CHARLESTON.

## SHIELDS v. TARLETON et al.

### Decided December 1, 1900.

VENDOR'S LIEN—*Enforcement—Laches.*

S. became the owner of certain notes by assignment, which were purchase-money notes secured by reservation of the vendor's lien on a tract of land, and employed B. to enforce the lien and collect the same. On the 1st of May, 1874, a decree was obtained directing a sale of said land, which was executed on the 10th of June, 1878, confirmed without exception in April, 1879, and a ueed directed to be made ιo D., the purchaser. B. was appointed special commissioner to execute the decree and deed, and made the sale without executing the bond required by the statute and by the decree. No legal proceeaings were instituted by S. to collect saiα purchase money from B., who had faileu to pay over the same, until April, 1898, long after D. hau conveyed said lanα to innocent purchasers; when a suit in equity was brought by the administrator of S. against the estate of B. and against D., to recover said purchase money from the estate of B., or subject said land to resale under said vendor's lien. *Held* that, by reason of the plaintiff's *laches*, he is entitled to recover in neither aspect. (p. 347).

Appeal from Circuit Court, Ritchie County.

Suit by W. L. Shields against M. H. Tarleton, administrator, and others. Decree for defendants, and plaintiff appeals.

*Affirmed.*

H. C. SHOWALTER, for appellant.

MERRICK SMITH, R. S. BLAIR, JR., and THOMAS E. DAVIS, for appellees.

ENGLISH, JUDGE:

R. S. Blair as attorney for W. H. Shields instituted a suit in the circuit court of Ritchie County in the name of said Shields against David Kirk and Samuel Young, making the process returnable to February rules 1874, which suit had for its object the enforcement of a vendor's lien on a tract of land retained in a deed of conveyance executed by said Young to said Kirk about the 14th of January, 1871, for the sum of three thousand

eight hundred dollars, being the balance of the purchase money thereon, and on the 1st of May, 1874, a decree was obtained directing a sale of said land, and appointing said Blair as special commissioner to execute the term of said decree. Before any sale was made under this decree W. H. Shields died and the suit was revived in the name of W. L. Shields, his administrator. Blair, without giving the bond as special commissioner required by statute, proceeded to make sale of said land and David McGregor became the purchaser for one thousand two hundred and one dollars, which sale was confirmed. In April, 1878, exceptions were filed to the sale so made, and the report thereof, and of April 27, 1878, a decree was entered setting aside the former decree of confirmation, and the commissioner was directed to resell said land, which he did on May 6, 1879, at which second sale Thomas E. Davis became the purchaser for the sum of one thousand one hundred and twenty dollars, complying with the terms of sale by paying to Blair special commissioner the cash payment required by said decree and executing his note for the deferred installments. By a subsequent decree the sale to Davis was confirmed and Blair was directed to pay W. L. Shields, administrator as aforesaid, nine hundred and ninety-six dollars and seventy-eight cents. By this decree, Blair, special commissioner, was also required to execute a bond in the penalty of two thousand five hundred dollars before collecting the purchase money notes, and was directed to pay the money so collected to the parties entitled thereto, and upon the payment of such money, was directed to execute and deliver a deed for said land to Thos. E. Davis.

This deed was executed and delivered, and we must presume the purchase money was paid, or the deed would not have been delivered.

At the April rules, 1898, a bill was filed by W. L. Shields administrator against M. H. Tarleton administrator *de bonis non* of the estate of R. S. Blair, T. E. Davis and others, setting forth the above facts, alleging that the estate of R. S. Blair, deceased, was liable because of his failure to pay over the proceeds of said sale as special commissioner to the parties entitled thereto as directed by the court, and for his failure to give the bonds as ordered.

The plaintiff also alleged that by virtue of the vendor's lien retained in the deed executed by said Young to Kirk for three

thousand eight hundred dollars, being balance of purchase
money thereon, evidenced by notes that were assigned to said
W. H. Shields in his lifetime, the plaintiff yet is entitled to
enforce said vendor's lien; that no portion of lien retained
on the face of said deed had ever been satisfied; that by reason
of said lien the plaintiff is at least entitled to recover one thou-
sand one hundred and twenty dollars with interest, the amount
for which said land was purchased by said Davis at the front
door of the court house; that said Blair had no right to receive
said purchase money until he complied with the requirements
of the decree by executing the bonds directed thereby; and that
said Blair, a special commissioner, failed to pay over to plain-
tiff the proceeds of said sale as he was ordered to do by the
court; and by reason of these facts said vendor's lien was still
in force, and no portion of the same had been satisfied, and
the plaintiff had the right to come into a court of equity to seek
relief.

The heirs at law of said Blair in their answer denied the alle-
gation that frequent demands had been made upon Blair or his
representative for the payment of the amount set up in the
bill, and they, as well as said Davis, plead and relied upon
*laches* and the statute of limitations; and said defendants also
demurred to the plaintiff's bill.

On February 27, 1899, a decree was entered dismissing the
plaintiff's bill; and from this decree the plaintiff obtained this
appeal.

The action of the court in dismissing the plaintiff's bill is
assigned as error.

In considering the questions presented by the record in this
case we ask first whether the lien reserved on the face of the
deed from Young to Kirk which lien was subsequently assigned
to W. H. Shields by a transfer of the purchase money notes to
him, has been lost and obliterated by the proceedings in the
chancery suit instituted by Blair as attorney for Shields for the
purpose of enforcing the same? Or can we say that said lien
which was reserved on the face of the deed has lost its effect
and vitality by reason of *laches* on the part of said Shields or
his personal representative?

The defendant Davis in his answer relies on the statute of
limitations, but this Court has frequently decided that this
statute will not avail a defendant where the object of the suit

is to enforce a vendor's lien. See *Hull's Adm.* v. *Hull's heirs,* 35 W. Va. 156 (point 7 of syllabus) ; *Evans* v. *Johnson et al.,* 39 W. Va. 299, (point 4 of syllabus).

In the case of *Benson* v. *Snyder,* 42 W. Va., BRANNON, JUDGE, speaking for the Court says: "Such a lienor is one whose claim is apparent on the face of the very title of the debtor whose land you propose to sell. He has a specific lien created by the debtor's title deed and is not a general lienor like a judgment lienor, and under equity principles a trust exists between vendor and vendee, by which the vendee holds title in trust for the vendor as to the purchase money. * * * * . Such vendor's lien retained in a deed is treated as a mortgage." Citing *Coles* v. *Withers,* 33 Grat. 186.

In the case at bar, Davis became the purchaser of this land at the sale made by special commissioner Blair, without informing himself whether or not Blair had complied with the requirements of the decree by entering into bond in the penalty of three thousand dollars before receiving any money under the decree. It has been held that the purchaser of land at a sale of this nature must look to the regularity of the sale and ascertain whether the commissioner making the sale has pursued the requirements of the decree by executing the bond dircted, that the rule *caveat emptor* applies, and he purchases at his own risk. This question was passed upon by the court of appeals of Virginia in *Lloyd* v. *Erwin's Adm'r,* 29 Grat. 598, where it was held:

1. "A purchaser at a judicial sale of land pays the purchase money to the commissioner; but the commissioner has not executed the bond required by the decree, or the bond executed by him is disapproved by the clerk: the purchaser has paid in his own wrong, and the land is liable for the purchase money received by the commissioner and misapplied, though the land has been conveyed by the commissioner to the purchaser, as the decree directed to be done when the purchase money was paid.

2. "In such a case the parties entitled to the funds are not bound to proceed against the commissioner and his sureties in the bond he executed but which the clerk disapproved, before proceeding against the land, to have it subjected to the payment of the purchase money misapplied by the commissioner."

The facts in the case of *Donahue* v. *Fackler,* reported in 21

W. Va. 124, are similar to those in the case at bar. There it was held:

1. "The said persons appointed commissioners had no authority to receive said purchase money either as commissioners or as counsel for the parties, and the purchaser is bound to pay it again.

2. "The commissioners having received the money without authority are liable in this suit to the purchaser for the amount so paid them or either of them, with interest thereon, from the time it was paid to them."

Now, under these authorities, it is clear that if W. H. Shields in his lifetime, or his administrator after his decease, had asserted the claim set up in the bill, he might have been entertained in a court of equity; he, however, was fully cognizant of the fact that Davis had paid the purchase money for this land into the hands of Blair, the special commissioner, who was his counsel, employed for the purpose of enforcing the vendor's lien against said land, yet he waits seventeen or eighteen years without taking any legal steps to collect said money from Blair, and, so far as the record shows, making no demand of any kind of the defendant Davis for the payment of said money. In the meantime Davis conveyed the land to innocent purchasers whose rights intervene, while the plaintiff Shields and his attorneys, instead of taking any legal steps against Blair to collect said money, contented themselves by writing occasional letters to him in which they seem to look to him alone for payment, and acquiesce in his having received the said money as Shield's counsel. This course was pursued by the plaintiff until the claim against Blair was barred by the statute of limitations, and the plaintiff seeks to require said purchaser Davis to pay the purchase monew a second time, and he relies upon the *laches* of the plaintiff in asserting his claim. In *Trader* v. *Jarvis,* 23 W. Va. 108, this Court held: "Delay in the assertion of a right, unless satisfactorily explained even where it does not constitute a positive statutory bar, operates in a court of equity as an evidence of assent, acquiescence or waiver, and especially is such the rule in suits to set aside transactions on account of fraud or infancy. A court of equity which is never active in relief against stale demands will always refuse relief where the party has slept upon his right and acquiesced for a great length of time. Nothing can call into

activity this Court but conscience, good faith and reasonable diligence. Where these are wanting, the Court is passive, and does nothing. *Laches* and neglect are always discountenanced."

See also *Pusey* v. *Gardner,* 21 W. Va. 470. (point 6 syllabus); *Harwood* v. *R. R. Co.,* 17 Wall. 81.

Applying these principles to the facts disclosed by the record my conclusion is that the circuit court committed no error in dismissing the plaintiff's bill. The decree is affirmed.

*Affirmed.*