# WHEELING.

## PHILLIPS v. PINEY COAL CO.

### Submitted February 2, 1903.    Decided June 6, 1903.

1. BILL—*Demurrer—Laches.*
    A bill is bad on demurrer when it appears therefrom that there have been unreasonable delay and *laches* on the part of the complainant in asserting the rights which are sought to be enforced.    (p. 548).

2. LACHES.
    A court of equity will not assist one who has slept upon his rights and shows no excuse for his *laches* in asserting them. (p. 548).

3. MARRIED WOMAN—*Laches.*
    Under the Statutes of this State a married woman being authorized to act in respect to her separate estate as if she were unmarried, she is equally subject to the imputation and consequences of *laches* as if she were *feme sole.* (p. 548).

Appeal from Circuit Court, Raleigh County.

Bill by Nannie L. Phillips against The Piney Coal & Coke Company.    Judgment for defendant, and plaintiff appeals.

*Reversed and Bill Dismissed.*

J. H. MCGINNIS and J. W. MCCREERY, for appellees.

BROWN, JACKSON & KNIGHT, for appellants.

McWHORTER, PRESIDENT:

Wilson Phillips was the owner of a tract of four hundred and thirty-five acres of land in Raleigh County and desiring to convey to his wife two hundred acres of the said tract, he and his wife on the 27th of May, 1879, by deed of that date, conveyed to Peter R. Wilson, the father of Nannie L. Phillips, the wife of the grantor, a part of said tract described as follows: "Commencing at the mouth of a branch on Soak Creek; thence following the stream until it empties into the waters of Piney river; then following the course of the waters of Piney river for the distance of two hundred and fifty poles; thence running in a northwesterly direction till it strikes the public road; thence following said road in a southeasterly direction till it strikes the branch of said creek, to place of beginning, containing two hundred acres more or less." At that time the grantor lived in Pennsylvania and the description of the land was made according to the recollection of the grantor. On the same day and by deed executed on the same sheet of paper Peter R. Wilson and Louisa, his wife, conveyed with general warranty, to Nannie L. Phillips the "same piece of land described in the first page of this deed," etc., but the call running from the end of the two hundred and fifty poles in the last named deed was made to read "Thence running in a southwesterly direction until it strikes the public road" instead of northeasterly, as in first deed. On the 8th day of January, 1890, Wilson Phillips and Nannie L. Phillips, his wife, conveyed to Azel Ford the tract of four hundred and thirty-five acres describing the whole tract by metes and bounds, but "Excepting from the above boundary a tract of land now owned by said Nannie L. Phillips and conveyed to her by Peter R. Wilson and wife by deed dated the twenty-seventh day of May, A. D. 1879." Then describing the land so excepted by the same description set out in the deed from Peter R. Wilson and wife to Nannie L. Phillips, which deed to Ford was recorded February 27, 1890. And by deed dated the 3rd day of March, 1890, said Ford and wife conveyed, with general warranty, the said tract of land conveyed to him by said deed of the 8th of January, 1890, to Logan Bullitt, of Philadelphia, with covenants "to execute further assurances of their said lands and

other property, rights, privileges and easements aforesaid as
may be required" which deed was recorded March 10, 1890.

By deed dated the 5th day of May, 1898, said Bullitt and his
wife conveyed said land to the Piney Coal Co., of Raleigh
County, with like further assurances, which deed was recorded
on the 12th day of May, 1898. At the March rules, 1900, (pro-
cess having been issued January 2, 1900,) Nannie L. Phillips
filed her bill in the circuit court of Raleigh County against
the Piney Coal Co., Logan and Bullitt, Azel Ford and Wilson
Phillips, praying that the said deed of January 8, 1890, made
by Wilson Phillips and herself to Azel Ford be reformed so
as to run in a northwesterly direction till it strikes the public
road so as to give her the land described in the deed from
her husband and herself to Peter R. Wilson and as laid down
by Milton Curtis on a plat filed with the bill as an exhibit, she
having had the same surveyed by said Curtis, and for general
relief.

The defendant, Piney Coal Co., filed its demurrer in writing
to plaintiff's bill setting up among other things for cause of
demurrer that the said bill and exhibits show affirmatively
that the tract of land claimed by plaintiff cannot be located,
bounded and described as claimed by her, and that plaintiff had
been guilty of *laches* in waiting ten years before bringing her
suit and suffering successive transfers of the land in controver-
sy to be made in the meanwhile, and should therefore be denied
relief, also that said bill failed to show how demurrant claimed
said tract of land should be located, bounded and described or
what land, if any, of said plaintiff demurrant claimed. Defend-
ants, Ford and Bullitt also demurred to the bill; which de-
murrers were overruled. The defendants, Piney Coal Co., Bul-
litt and Ford, filed their several answers to the plaintiff's bill,
denying the material allegations thereof, to which answers
plaintiff replied generally. Defendant Wilson Phillips also
filed his answer admitting the allegations of the plaintiff's bill
and asked that proper relief be granted in the premises to all
the parties according to the facts given in the case.

Depositions were taken and filed by the respective parties and
on the 6th day of November, a decree was rendered reforming
the several deeds from Peter R. Wilson to Nannie Phillips
and from Phillips and wife to Ford, from Ford to Bullitt and

from Bullittt to the Piney Coal Co., and appointed a surveyor to go upon the land and lay off two hundred acres more or less, to the plaintiff according to the description given in the deed from Wilson Phillips and wife to Peter R. Wilson, on May 27, 1879, the said surveyor to give the parties to the suit fifteen days notice of the time of doing such work. From which decree the Piney Coal Co. appealed.

The first question to be disposed of is the assigned error in overruling the demurrer. It is claimed that the plaintiff was guilty of gross *laches* in the delay that she made in bringing her suit, being quite ten years after the date of the deed to Azel Ford, and with no reasonabe or sufficient explanation of such delay. Plaintiff held under the deed dated the 27th of May, 1879, which was admitted to record July 6, 1879, so that from the time the mistake was made to the date of the institution of the suit, within a few months of twenty-one years; but whether she could be guilty of *laches* as between herself and her husband, is immaterial here, as the time which elapsed after making the deed to Ford is sufficient to be fatal in her case, if a married woman can be guilty of *laches.* The only explanation that she attempts in her bill to make of her long delay of ten years is that as soon as she ascertained that the defendant set up any claim to her tract of land described in the deed of May 27, 1879, she caused a survey to be made. She fails to even allege that she did not know of the mistake in the deed all the time. She does not say when she first knew of it. Was it not her duty to know of this mistake when her deed had been in her possession and of record all that time? Is she not bound to know what is in her deed? *Lafferty* v. *Lafferty,* 42 W. Va. 783; *Badger* v. *Badger,* 2 Wall. 87. In the latter case Justice Grier, at page 94, says: "Now, the principles upon which courts of equity act in such cases, are established by cases and authorities too numerous for reference. The following abstract quoted in the words used in various decisions, will suffice for the purpose of this decision: 'Courts of equity, in cases of concurrent jurisdiction, consider themselves bound by the statutes of limitation which govern all courts of law in like cases, and this rather in obedience to the statutes than by analogy.

'In many other cases they act upon the analogy of the like limitation at law. But there is a defence peculiar to courts of equity founded on lapse of time and the staleness of the claim, where no statute of limitation governs the case. In such cases, courts of equity act upon their own inherent doctrine of discouraging, for the peace of socciety, antiquated demands, refuse to interfere where there has been gross *laches* in prosecuting the claim, or long acquiescence in the assertion of adverse rights. Long acquiescence and *laches* by parties out of pessession are productive of much hardship and injustice to others, and cannot be excused but by showing some actual hindrance or impediment, caused by the fraud or concealment of the parties in possession, which will appeal to the conscience of the chancellor.

'The party who makes such appeal should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim; how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance; and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the chancellor may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer.' "

All this time plaintiff remained passive permitting a succession of conveyances of the property according to the description in the conveyance made by her husband and herself to Ford, so that the property has passed into several hands since their conveyance. In *Whittaker* v. *Improvement Co.,* 34 W. Va. 217, it is held, syl. pt. 3, "He who elects to set aside his contract for fraud must bring suit for the property without unreasonable delay after the discovery of the fraud, unless there be good reason to excuse it; otherwise his delay will deny him relief." And point 4, in same syllabus, "The defence of *laches* may be made by demurrer when the facts manifesting it appear in the bill." This question of *laches* is well discussed in the case last cited, at page 229, after citing *Bank* v. *Carpenter,* 101 U. S. 567, where it is held: "Where it appears by the bill that the remedy is barred by lapse of time or by reason of *laches* he is not entitled to relief, the defendant may be denied to avail himself of the objection." The

judge speaking for the court says: "I am convinced that this defence of *laches* is alone a complete bar to the plaintiff's bill. The option dates April 19, 1881, the deed November 12, 1881, the suit in May, 1887, a period of more than six years from the date of the option and five and a half from the date of the deed. Decisions of this Court furnish emphatic authority on this subject. *Trader* v. *Jarvis,* 23 W. Va. 100, holds that 'delay in the assertion of a right, unless satisfactorily explained, even where it does not constitute a positive statutory bar, operates in equity as evidence of assent, acquiesence, or waiver; and especially is such the case in suits to set aside transactions on account of fraud or infancy. *Laches* and neglect are always discountenanced in a court of equity.' There was a delay of nearly seven years there." In *Lansdale* v. *Smith,* 106 U. S. 391, it is held: "A bill is bad on demurrer where it appears therefrom that there have been unreasonable delay and *laches* on the part of the complainant or those under whom he claims, in asserting the rights which he seeks to enforce." And in *Speidel* v. *Henrici,* 120 U. S. 377, "A court of equity will not assist one who has slept upon his rights and shows no excuse for his *laches* in asserting them." And in *Greenlees* v. *Greenlees,* 62 Ala. 330, "It is settled in this State that in courts of equity lapse of time rendering a demand stale or statute of limitations, the bill disclosing that the claim or demand is obnoxious to either may be taken advantage of by answer or demurrer as well as by plea." See also *Bercy* v. *Lovrette,* 63 Ala. 374; *Sublette* v. *Tinney,* 9 Cal. 423. In 18 Am. & E. E. L. 107 (2d ed.) "If a married woman is authorized to act in respect to her separate estates as if she were unmarried, she is equally subject to the imputation and consequences of *laches* as if she were a *feme sole.*" In *Gibson* v. *Herriott,* 55 Ark. 85; 29 Am. State 17, I quote from the opinion because it is so applicable to the case at bar under the changed conditions created by our statutes, as affecting the rights of married women. "At common law, while a married woman remained under the disability of coverture, she could not be guilty of *laches,* In equity she is considered in all respects as a *feme sole* in respect to property settled to her sole and separate use. Under the Constitution of this State, her real and personal property, acquired in any manner, are and remain her sepa-

rate estate and property so long as she may choose, and can be devised, bequeathed, or conveyed by her the same as if she were a *feme sole,* and are not subject to the debts of her husband. Under our statutes property owned by her at the time of her marriage, or acquired by her afterwards, is and remains her sole and separate property, and can be used by her in her own name, and is not subject to the interference or control of her husband. She can bargain, sell, assign and transfer her separate personal property, and carry on any trade or business and perform any labor or services on her sole and separate account; and her earnings from her trade, business, labor, or service are her sole and separate property, and can be used or invested by her in her own name. No bargain or contract made by her in respect to her separate property, or in or about her trade or business, under the statutes of this State, is binding upon her husband, or renders him or his property in any way liable therefor. She can be sued alone upon contracts made by her in respect to her sole and separate property, or in respect to any trade or business carried on by her, and can maintain an action in her own name for or on account of her sole or separate estate or property, business or services, or for damages against any person or body corporate for any injury to her person, character, or propety. In an action brought or defended by her in her name, her husband or his property is not liable for the costs thereof or the recovery therein. Whenever judgment is recovered against her, it can be enforced against her sole and separate property to the same extent and in the same manner as if she were sole. The statutes cloth her with the same property rights, and, with few exceptions, subject her to the same liabilities as her husband. She can manage her own property and bind herself by contract, with the exceptions of contracts to convey land, in respect to her property, separate trade, or business, as fully and to the same extent as he can. Vested with the rights of property and the right to sue and be sued possessed by her husband, she is subject to the same rules which restrict and control his rights. For this reason, it has been held by this Court that she is barred by the statute of limitations which prescribes the time within which actions to recover land sold at judicial sales shall be commenced. For the same reason she can be guilty

of *laches*.  The disabilities of coverture in respect to her separate property having been removed, she is to the same extent relieved of its consequences:    *Steines* v. *Manhattan Life Ins. Co.*, 34 Fed. Rep. 441, 444; *Burkle* v. *Levy*, 70 Cal. 250, 254; *Morrow* v. *Goudchaux*, 41 La. Ann. 711; *Lewis* v. *Barber*, 21 Ill. App. 638, 641."

For the reasons herein given the decree must be reversed, and this Court proceeding to render such decree as the circuit court should have rendered, doth sustain the demurrer and dismiss the bill.

*Reversed and Bill Dismissed.*