## THURMOND v. CHESAPEAKE & O. RY. CO.

(Circuit Court of Appeals, Fourth Circuit. November 9, 1905.)

### No. 572.

1. EQUITY—GROUNDS FOR DEMURRER—LACHES.

The defense of laches may be made by demurrer, where the facts constituting such laches appear on the face of the bill.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Equity, § 498.]

2. SPECIFIC PERFORMANCE—DEFENSE OF LACHES.

A bill to enforce specific performance of a contract by which a railroad company agreed to locate a station on land of complainant was properly dismissed on the ground of laches, where it appeared on its face that more than 16 years had elapsed since the contract was made, and that shortly thereafter defendant had built, and during most of the time since had maintained, a station at another point only a short distance from complainant's land, which had become an important shipping point.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Specific Performance, § 330.]

Appeal from the Circuit Court of the United States for the Southern District of West Virginia, in Equity.

George E. Price, for appellant.

F. B. Enslow, for appellee.

Before GOFF and PRITCHARD, Circuit Judges, and MORRIS, District Judge.

GOFF, Circuit Judge. The appellant, who was complainant below, alleges in his bill that in the year 1887 he was the owner of a tract of about 80 acres of land on New river, opposite the mouth of Arbuckle creek, in Fayette county, W. Va., a short distance below the Loup Creek Bridge of the Chesapeake & Ohio Railway Company at Thurmond; that such tract embraced all the bottom land for two-thirds of a mile on that side of the river, and that by reason of its scarcity such bottom lands in that locality were then and still are very valuable, as they offered facilities for railroad and coal mining purposes; that the Chesapeake & Ohio Railway Company, without having acquired the right so to do, constructed its railroad through said tract of land along the river; and that, when complainant objected to such use of his land, said company, for the purpose of securing title to the strip of land upon which its road was built, entered into a contract with complainant by which he agreed to convey to it 75 feet on each side of the center line of its roadbed through said land, and further consented to convey a lot of ground for a depot, the precise location of said lot to be thereafter decided upon, in consideration of which the company agreed that the local freight trains of said railroad should stop on signal at a point near said lot, until such time as in the discretion of the second vice president of said company its business would justify the erection of a building at that place. Other matters not necessary to be here specified were included in said agreement, which bore date August 13, 1887. The complainant further alleges that at the time said agreement was so entered into there was no depot of said company near said land, and

that there was comparatively but little business then transacted there, but that thereafter the business of said railway company greatly increased at that point, and that the place, growing in business and population (called Thurmond), became one of the most important stations for both passenger and freight business in that section of the country; that complainant, as said business so increased, made repeated efforts to induce the said railway company to erect the depot on said land in accordance with the agreement mentioned; that he offered and has always been willing to donate to said company the lot of land suitable for such building, as the same might be directed by the company's engineer for that purpose; that some years after said agreement was entered into the defendant, in disregard of the rights of the complainant and in violation of the agreement mentioned, erected a depot a few hundred feet away from said point (Arbuckle), at a place opposite the mouth of Loup creek; that at the time this was done complainant protested against it, and insisted on the building of the depot at the point named in said contract, but that the company failed and refused so to do; that recently the said depot at Thurmond was destroyed by fire, and that complainant then again appealed to said company to carry out its agreement with him, and insisted that it should then erect a building at Arbuckle for the transaction of its business in that locality, and that it should abandon the site opposite Loup creek where the old depot had been located; that the defendant has failed and still refuses to respect its said contract and to build said depot at Arbuckle, or at any point on complainant's land, and has announced its intention of rebuilding the depot at the former location.

Complainant further set forth that the point at Arbuckle, where by the agreement with him said depot was to have been erected, was a proper, convenient, and suitable place for the same, a location that would have suited the business of the company in that locality, and that there was no good reason why the railway company should not carry out its contract with the complainant; that the great inducement which caused him to make said agreement was the promise of the defendant to locate its depot at Arbuckle on his said land, and that, anticipating that his contract with the company would be carried out, he had erected a large hotel building at that point, and made other improvements, the value and patronage of which would be largely enhanced if the depot had been located as contracted for, and that a large part of the remainder of complainant's land at that point would have been greatly increased in value thereby; that complainant would not have conveyed said land, nor made said agreement, but for the promise of the railway company to locate its depot as mentioned. The complainant asked that the defendant be compelled to specifically perform the agreement of August 13, 1887, and that it be required to erect and maintain a depot for the accommodation of passenger and freight traffic at Arbuckle, as named in said contract, and that it be enjoined and restrained from erecting a depot at the site where the former building had been erected; and that if the court should be of the opinion that the railway company should not be compelled to erect its depot at Arbuckle, that then the said deed and agreement of August 13, 1887, be set aside, and the title

to said land be restored to complainant, or that the company be compelled to pay the complainant full value for the land conveyed by the deed and agreement.

A demurrer to the bill was filed by the Chesapeake & Ohio Railway Company, and, counsel having been heard thereon, the court below sustained the demurrer and dismissed the bill, at complainant's cost. From the decree of dismissal, the appeal now under consideration was allowed.

The main reason assigned by the demurrer was that the cause of complaint was stale, and that the laches on the part of the complain- as shown by his bill, should bar his right to prosecute his suit.    In other words, it is insisted that, conceding the allegations of the bill to be true, they show that so long a time has elapsed since the matters complained of took place, that it would be contrary to equity and good conscience, and against public policy, for a court to now take cognizance of them. It appears from the bill that the contract relied upon by the complainant was entered into on the 13th day of August, 1887, and from the record it appears that complainant's bill was filed on the 7th day of January, 1904.    The bill alleges that a short time after the agreement between the complainant and the defendant was entered into the defendant, in disregard of the terms of its contract, erected a depot at Thurmond, a point other than the one mentioned in the agreement, to which action of the defendant the complainant protested.    It seems that he contented himself with a protest, and an insistence of the building of the depot at the point named in the contract, and that he at that time took no legal action looking to the enforcement of the provisions of the agreement mentioned.    More than 16 years had passed since the making of said contract, and during all of that period of time the defendant had operated its railway, and during a greater part thereof had had used its depot at Thurmond, so operating and so using with the knowledge, and seemingly with the acquiescence, of the complainant, who now for the first time seeks the specific performance of a contract, the provisions of which he admits have been continuously infringed upon during the years mentioned.

The suggestion that the defense of laches cannot be made by demurrer, but should be specially pleaded or set up in an answer, is without merit, as the rule in courts of equity is now well established that, if the bill shows on its face that the aid asked for should be refused, the defense thereto may be made by demurrer.    And as laches on complainant's part in asserting his claim is a bar in equity, there can be no good reason for requiring a plea or an answer if the defense is shown by the bill itself.    Maxwell, Adm'r, etc., v. Kennedy et al., 8 How. 210, 12 L. Ed. 1051; National Bank v. Carpenter, 101 U. S. 567, 25 L. Ed. 815; Lansdale v. Smith, 106 U. S. 391, 1 Sup. Ct. 350, 27 L. Ed. 219.    In equity it is essential that the complainant should be "prompt, eager, and ready," in the prosecution of his rights.    Diligence is always expected of those who seek equitable relief, and courts of equity universally discountenance negligence.    The Supreme Court of the United States in O'Brien v. Wheelock, 184 U. S. 450, 493, 22 Sup. Ct. 354, 46 L. Ed. 636, speaking through the Chief Justice, says:

"The doctrine of courts of equity to withhold relief from those who have delayed the assertion of their claims for an unreasonable length of time is thoroughly settled. Its application depends on the circumstances of the particular case. It is not a mere matter of lapse of time, but of change of situation during neglectful repose, rendering it inequitable to afford relief."

No sufficient excuse is given in the bill for the complainant's delay in asserting his rights under the contract relied upon by him, and he seems to have acted, when he did file his bill, under the impression that the burning of the building used by the railway company as a depot afforded him good ground and a fair excuse for so proceeding. In this he was mistaken, for that did not restore conditions as they previously existed, nor did it either add to or detract from his rights under his contract. It clearly appears from the bill that the conditions existing in 1887, when the contract relied upon was entered into, had greatly changed at the time the complainant endeavored to enforce the rights claimed by him, and this change had taken place not only with the knowledge, but with the acquiescence of complainant. The bill states that at the time the contract was made there was no depot at that point, and that one of the provisions of the agreement was that there should be no depot until the necessity for one existed. At the time the contract was made the place now called Thurmond had no existence; but when the bill was filed it was one of the most important points for both passenger and freight business in that locality. When the contract was made the Loup Creek Branch of the Chesapeake & Ohio Railway had not been built, nor had the bridge over the New river at Thurmond been constructed. It is quite apparent, from the circumstances as detailed in complainant's bill, that it was because of the great changes referred to, and the necessity that evidently existed for the accommodation of railway traffic and the convenience of the public, that the station was located at Thurmond, instead of Arbuckle; and it is also plain that the complainant must have been himself deeply impressed with the necessity and propriety of such location at Thurmond, otherwise he would not, through all the years mentioned, have acquiesced therein. The question of laches is one always to be determined by the circumstances of the particular case in which it arises, and in the controversy now under consideration the facts as they are set forth in the bill clearly show that the complainant by his delay has lost the right he claims under his contract, to insist on the location of the depot at Arbuckle.

Reaching the conclusion we do on this question, it seems unnecessary to further consider the assignments of error. There is no error in the decree appealed from, and the same is affirmed.