In 1861 Wm. A. McMullin and G. A. Morrison conveyed to Samuel M. Young, as trustee for Elizabeth, the wife of Charles Young, a tract of 270 acres in Kanawha County. The grantees were given the privilege of using coal for household purposes. With that exception the minerals were reserved. The plaintiffs are claimants, by descent or assignment under the McMullin and Morrison title, of the minerals on the above tract. The principal defendants occupy parts of the 270 acres in severalty, under conveyances mesne or immediate from the Youngs. Those conveyances were made for the most part between 1880 and 1920 and purport to *Page 319 
convey the entire estate of the tract granted without excepting the minerals. Under those deeds the defendants have claimed the minerals and treated them as their own. The entire estate has been charged on the land books to, and the taxes paid by, the Youngs and their successors since 1865. The minerals reserved were never charged on the land books to, or any taxes thereon paid by, McMullin and Morrison and their successors. This suit was brought in November of 1924. Its purpose is to have cancelled all oil and gas leases made by defendants and all deeds under which they hold, so far as they import a conveyance of the minerals. The circuit court of Kanawha County found the plaintiffs guilty of laches and dismissed the bill.
The only allegation in the bill tending to explain the long delay in prosecuting this remedy is the following:
 "That nearly all the plaintiffs are non-residents of the State of West Virginia, and that none of the plaintiffs were aware until a short time before the institution of this suit that the defendants or any of them were claiming title to said minerals."
Under Bill v. Schilling, 39 W. Va. 108, (121) it is doubtful if non-residence alone is sufficient to excuse delay. See also 21 C. J., Sec. 233, p. 240. A bare allegation of non-residence certainly does not comply with the rule announced in the leading case of Badger v. Badger, 2 Wall. 87 (94-5) and adopted generally by the courts, which requires a bill in such case to set forth specifically how and when the matters alleged therein came to the knowledge of the plaintiffs. "A mere general allegation of ignorance at one time and knowledge at another is of no effect." Wood v. Carpenter, 101 U.S. 135
(140); Harper v. Combs, 61 W. Va. 561 (564); Hogg v. Shield,114 Va. 403; James v. James, 55 Ala. 525.
If it be conceded that the allegation of non-residence is good on demurrer, it is directly challenged by answer and not sustained by the evidence. Nelson V. McMullin is the only plaintiff who testifies. He admits knowing of defendants' adverse claims in 1916 or 1917, yet he gives no reason *Page 320 
for waiting from that time to 1924 before commencing this suit. The record does not disclose when the other plaintiffs learned of the invasion of their rights, and contains no excuse whatsoever for a failure to start this proceeding sooner. What was said by this court in Bryant v. Groves, 42 W. Va. 10 (17) will apply with equal precision here. "In this case, the plaintiffs, owing to their failure to sustain by proof the alleged causes for their delay, are left entirely without any excuse. It must be taken for granted that their failure to sustain the necessary allegations of their bill was occasioned by their inability to do so." Identical with that conclusion isKavanaugh v. Flavin, 35 Mont. 133. "A court of equity will not assist one who has slept upon his rights and shows no excuse for his laches in asserting them." Phillips v. Piney Coal Co.,53 W. Va. 543; Holsberry v. Harris, 56 W. Va. 320;Howe v. Comm'rs., 119 Ill. 101.
But, says plaintiffs' brief, "How can it be said that the McMullins have slept upon their rights when they had no knowledge that there was oil in the premises until it was actually discovered and where have defendants suffered any possible disadvantage ever by any act of the plaintiffs?" Citing Lannerd v. Burnam, 93 W. Va. 744; Bates v. Perry,51 Mo. 449.
It appears from the evidence that coal banks have been opened on some of the tracts of defendants, and coal openly mined and sold commercially, though in a small way, for twenty odd years before 1924. The plaintiffs contend that the defendants had the right under the original conveyance to the Youngs to use the coal for domestic purposes, and that the sales of coal were in such small quantities as to furnish no notice of adverse claims. McMullin et al. v. Pritt et al., 103 W. Va. 582, is a companion case to this. Much of the opinion in that case is applicable here, particularly our ruling on the right to use the coal for domestic purposes. "It is not necessary to decide in this case whether the privilege of using coal for household purposes, granted in the deed to Young, trustee, was a personal or real covenant. If personal, it ended with the conveyance in 1882 to Matheny. If real, it passed with land to Matheney; but it was only *Page 321 one right. Its enjoyment was limited to one family. It is not such a privilege as is practicable to apportion to the several grantees of Matheney, under the rule announced in Dickenson v.Hoomes' Adm'r., 8 Grat. (49 Va.) 353, and 15 C. J. 1259, Sec. 80. It could not pass to every grantee of a small portion of the 74 1/2 acre tract. Otherwise, what was originally designed as one right could be indefinitely multiplied, and, instead of one family using coal as many families would have that privilege as there were subdivisions of the 74 1/2 acres. See Washburn, Easements (4th Ed.) Sec. 12c; Pierce v. Keator,70 N.Y. 419, 26 Am. Rep. 612; Wilder v. Wheeler, 6 N.H. 351." The defendants therefore had no right to use the coal even for domestic purposes. Their use of it was as much notice to plaintiffs of hostile claims to the mineral as drilling for oil. The records of Kanawha County show that during the twenty years preceding this litigation many oil and gas leases were executed by the principal defendants, on the lands in controversy. In 1909 a "dry hole" was drilled on the tract of defendant C. W. Hanna, under a lease executed by him. In 1911 an oil well was drilled on a tract of defendant S. A. Buckner under a lease executed by him, which produced oil for some four years thereafter. The evidence shows that plaintiffs James H. McMullin, Guy A. Porter, E. S. Porter, Camden Porter, Edna Porter Plumley, G. A. Mathews, J. K. Mathews, Mary J. Massey and John Kenna Mathews have resided in Kanawha County for many years. It is inconceivable that they would not have known of such notorious activity in relation to the minerals on the 270 acre tract. This assumption is strengthened by the fact that within a year following the production of oil on the S. A. Buckner tract in 1911 plaintiff James H. McMullin, John H. McMullin, deceased, (the father of Nelson V. McMullin) and Mary Hudson, deceased, (the ancestor of numerous plaintiffs) executed a lease to Vespertine Oil Company on a boundary which included the 270 acres. According to Nelson V. McMullin the lessee did no drilling under this lease because of the "dry hole" on the Hanna tract, and "gave the lease up". The lease was not recorded and the defendants had no actual notice of it. Our assumption *Page 322 
is confirmed, however, by a clause in the lease, to-wit: "Whereas there is some doubt as to how much of said tract, or the oil and gas therein is owned by the parties of the first part by good and sufficient title. The party of the second part agrees to bear all necessary expenses of securing lease and the further expenses of all litigation which may be incurred in perfecting the title to the above mentioned oil and gas under said lands." With notice of adverse claims in 1912, plaintiffs waited 12 years before commencing this suit. Numerous cases have held that a much less delay than that period may constitute laches. See Whittaker v. Imp. Co., 34 W. Va. 217
(229, 230).
The evidence discloses that many of the predecessors in the title of the defendants are now dead. There is accordingly lost to defendants the evidence of such decedents as to the manner in which their claim to the minerals was asserted. In discussing the changes in conditions that constitute laches, it is said in a well considered opinion: "What constitutes a material change of condition has been the subject of much judicial discussion and some judicial dissension; but whatever doubt there may be as to other circumstances, it never has been questioned, to our knowledge, that the death of one of the parties to the transaction is such change." Riley v. Blackner,51 Mont. 364 (371). See also Pusey v. Gardner, 21 W. Va. 469;Cranmer v. McSwords, 24 W. Va. 594; Carter v.Price, 85 W. Va. 744 (749). It also appears that the taxes on the minerals have been paid and expenditures made by defendants because of reliance on their titles thereto, and that third persons have expended money in the acquisition of rights in the minerals who would be seriously affected if their deeds were cancelled. The record is, therefore, replete with disadvantages to the defendants by reason of the plaintiffs' delay in asserting their claims. 21 C. J. Equity, Secs. 226-7-8.
The brief also contends that the defendants' possession has not been sufficient to oust plaintiffs of their constructive possession of the minerals. It is not necessary for us to decide the question of ouster, and we do not do so. Laches does not necessarily depend on ouster or the statutory bar.Pusey *Page 323 
v. Gardner, supra; Trader v. Jarvis, 23 W. Va. 100. Laches has been defined "a claim which has been for a long timeundemanded". It is predicated on delay. It arises where the delay of one in demanding is prejudicial to the rights of another. "Laches in legal significance is not mere delay, but delay that works a disadvantage to another." Chase v. Chase,20 R.I. 202; Pom. Eq. Jur. 4th Ed., Sec. 1442; Snyder v. BridgeCo., 65 W. Va. 1; Carter v. Price, 85 W. Va. 744
In the case of Smith v. Clay, Ambler 645 (more fully reported in 3 Bro. C. C. 646), decided in 1767, Lord Camden, then the Lord Chancellor of England, said: "A court of equity which is never active in relief against conscience, or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights and acquiesced for a great length of time. Nothing can call forth this court into activity, but conscience, good faith, and reasonable diligence; where these are wanting, the Court is passive, and does nothing. Laches and neglect are always discountenanced." That statement, founded on equitable maxim, has become axiomatic. It is quoted by the leading authorities on equity jurisprudence. It has been restated in whole or in part in hundreds of decisions and has been criticised or questioned in none. Upon it is based Trader v. Jarvis, supra, the leading case on laches in this State. In reliance upon the principles pronounced in that case, we held that the lower court rightly refused to countenance plaintiffs' demands in McMullin et al. v. Pritt etal., supra. A further examination of the authorities justifies our confidence in Trader v. Jarvis, supra. The evidence here presents a stronger case of laches than the Pritt case. Reasonable diligence and activity are entirely wanting in this case. The decree of the lower court will accordingly be affirmed.
 Affirmed. *Page 324