## McMULLEN v. LEWIS et al.

Circuit Court of Appeals, Fourth Circuit.
April 9, 1929.

No. 2779.

Henry Simms, of Huntington, W. Va., and Hite H. Huffaker, of Louisville, Ky. (William Bullitt Dixon, of Louisville, Ky., Goshorn & Smith, of Charleston, W. Va., Simms & Staker, of Huntington, W. Va., and Fred W. Goshorn and Claude L. Smith, both of Charleston, W. Va., on the brief), for appellant.

Robert S. Spilman and George E. Price, both of Charleston, W. Va. (Hawthorne D. Battle and Price, Smith & Spilman, all of Charleston, W. Va., on the brief), for appellees.

Before WADDILL and PARKER, Circuit Judges, and BAKER, District Judge.

WADDILL, Circuit Judge. This is an appeal from a decree of the United States District Court for the Southern District of West Virginia, dismissing appellant's original and amended bills of complaint filed in that court.

On August 11, 1928, appellant, Nelson V. McMullen, filed his bill in the federal District Court at Charleston against a number of parties, including two corporations, described as "the heirs at law and successors in title to John D. Lewis, deceased," who was a defendant in certain ejectment actions and plaintiff in one of said actions, and others described as legatees and successors in title of John P. Hale, deceased, who was one of the plaintiffs in three of said ejectment actions. The relief sought by the bill was the setting aside of the awards of three arbitrators, returned on August 24, 1876, in each of 14 actions of ejectment, and the judgments rendered upon the awards on December 20, 1877, in 11 of said actions, as incident

to the recovery of certain lands to which complainant asserts title.

Before appearance by any of the defendants, complainant filed his first amended bill, substituting C. R. Brown, administrator of the estate of Mrs. Helen W. Scott, deceased, one of the alleged legatees of John P. Hale, and certain other persons supposed to be her heirs at law, for the defendant Helen W. Scott.

The defendants W. D. Lewis and others, on August 29, 1927, moved to dismiss complainant's amended bill, upon the ground that it appeared upon the face of the bill and exhibits that complainant was barred by the laches of himself and his father from disturbing said awards and judgments; that upon the refusal of the Supreme Court of Appeals of West Virginia to correct the alleged errors contained in said awards and judgments the same had become res adjudicata; that the mistakes and errors of the arbitrators could not be reviewed by complainant in this suit after the lapse of half a century; and that there was no averment in the bill that said defendants, or any one under whom they claimed, were guilty of fraud.

On September 17, 1927, before said motion to dismiss was heard, complainant filed his second amended bill, in which he averred, among other things, that the fraud complained of in his original bill consisted of a conspiracy between John P. Hale, coplaintiff with his father, J. Lewis McMullen, and with his grandfather, W. A. McMullen, in several of said actions, and Wm. H. Hogeman, counsel for said Hale, McMullen, and others, to conceal certain evidence from the arbitrators and fraudulently present other evidence to them. In his second amended bill complainant also sought to show that he had not been guilty of laches in asserting his claim. Elaborate exhibits were filed with the bill in support of the averments of fraud and mistake.

Defendants moved to dismiss the second amended bill upon the grounds stated in their former motion, and upon the further ground that the charges of fraud, conspiracy, concealment of relevant evidence, and introduction of incompetent testimony were disproved by the exhibits filed with said bills, upon which such charges were based. The motion to dismiss was fully argued before the trial court, and on February 8, 1928, the trial judge rendered a written opinion dismissing the bills.

After the opinion of the trial judge had been filed, complainant lodged in the clerk's office of the District Court his third amended bill of complaint, and on March 22, 1928, the cause came on to be again heard upon complainant's motion for leave to file said third amended bill, which was granted. Thereupon defendants moved to dismiss the third amended bill, and renewed their motions to dismiss complainant's original bill, and the first and second amended bills. On March 22, 1928, the trial court entered its final decree, sustaining said motions to dismiss, from which this appeal is taken.

The learned Circuit Judge, sitting in the District Court, in his opinion filed as a part of the record in this case, in briefly stating the complainant's case, the testimony to support the same, and his conclusions upon the facts and law covering the cause, said as follows:

"The bill alleges * * * that complainant's father, J. Lewis McMullen, who was a party to said suits, died September 10, 1918, and was at the time of his death a resident of the state of Kentucky; that one J. P. Hale and one J. D. Lewis, the said Lewis being a party to the suits in question, fraudulently conspired to conceal from said arbitrators certain material evidence, and to produce to said arbitrators certain incompetent and immaterial evidence, in order to affect in an improper way the arbitration in question, and that, in order to carry out said conspiracy, Hale, who was a co-owner with the said J. Lewis McMullen, dismissed the law firm of Swann & Lee, who had for many years represented the said J. Lewis McMullen, and employed one William H. Hogeman to represent the said J. Lewis McMullen and said John P. Hale; that the employment of said Hogeman was fraudulent and corrupt, and was for the purpose of securing the said Hogeman to betray the interest of his client, the said J. Lewis McMullen; that Hogeman had formerly represented John D. Lewis in suits concerning the title to some of the land in controversy, and that the said Hogeman joined with the said Hale and Lewis in the fraudulent conspiracy to secure wrongful awards from said arbitrators in favor of said John D. Lewis; that Hogeman, at the time he was acting as attorney in said arbitration, was secretary and director of a bridge company, of which C. C. Lewis, son of said John D. Lewis, was president, and that the said Hogeman was related by marriage to the said John D. Lewis.

"The bill further alleges that certain decisions of the Supreme Court of Appeals of West Virginia, and proceedings had in said court, in cases decided at the January term thereof in 1872, were fraudulently concealed and withheld from said arbitrators; that the

awards of said arbitrators were based upon mistakes as to surveys made, and proceedings had in other suits and proceedings at or about the same time, and upon various mistakes in the evidence produced before said arbitrators; that after the death of J. Lewis McMullen, in the year 1918, the complainant began an investigation with regard to certain land in West Virginia, that had been owned by his father; that complainant was advised, at a time not set out in the bill, by a lawyer whose name is not given, that it would be advisable to look into the matter; that he immediately began to examine the records with respect thereto, and that complainant discovered, 'more or less by accident,' in a collateral suit in the office of the clerk of the District Court of the United States, at Charleston, many papers bearing on the subject, but that it was not until the month of July, 1927, that he found out what his rights were, and was able to interest counsel in the prosecution of his claim, although he had prior thereto consulted numerous attorneys about the matter.

"The complainant prays that the said arbitration be declared null and void, and of no force or effect as to the complainant.

"The motion to dismiss is based upon the ground that the allegations of fraudulent conspiracy are insufficient and furnish no ground for setting aside the award complained of, and that the allegations of the bill are not supported by the exhibits filed therewith; that it does not appear what material and pertinent evidence was concealed from the arbitrators, or in what way the arbitrators were improperly influenced by the said Hogeman; that it does not appear in what way the awards of the arbitrators would have been different, if the proceedings in certain cases referred to in complainant's bill had been brought to the attention of the arbitrators; that it appears from an exhibit filed with the bill that the case was fully presented before the arbitrators in a proper way, and that the evidence taken before the arbitrators was not returned with and made a part of their award, and that, therefore, it is impossible now to determine whether any particular evidence was or was not introduced before the arbitrators; that it also appears from exhibits filed with the bill that one J. H. Ferguson was associated with Hogeman in representing the said J. Lewis McMullen in said arbitration, and that there are no allegations in the bill charging Ferguson with being a party to the conspiracy; and for the final reason that it is apparent from the bill and exhibits that the said J. Lewis Mc-

Mullen and the complainant, Nelson V. McMullen, were plainly guilty of laches in resting upon their rights for the period of more than 50 years that elapsed between the award of the arbitrators in 1876, and the bringing of this suit in the year 1927. * * *

"A study of the bill and exhibits leads to the opinion that it is impossible to reach the conclusion that the case was not properly handled before the arbitrators and in the subsequent proceedings before the circuit court of Kanawha County, which proceedings the Supreme Court of Appeals of West Virginia refused to review. * * * It is apparent from the bill and exhibits that all proceedings had before the arbitration were not certified by the arbitrators with their awards when the matter was presented to the circuit court of Kanawha county, and it is therefore impossible at this late day to prove just what was or what was not presented to the arbitrators. All the arbitrators, all the attorneys, and all the real parties at interest to the arbitration have long since died, and it would be a matter of absolute impossibility to ascertain definitely what was used in the arbitration.

"The allegation that Hogeman was a party to the conspiracy between Hale and Lewis is not supported in the bill by any specific allegations, other than that Hogeman was related by marriage to Lewis, and was associated in a bridge company with Lewis' son, that certain evidence was concealed that should have been presented, and that certain evidence was presented that was improper. None of these charges are sufficient, at this late day, upon which to base the allegation of fraud or fraudulent conspiracy, and it is to be presumed that, had the complainant within his knowledge any other specific charge which would have supported the allegation of fraud, he would have presented it.

"The bare allegation that a fraudulent conspiracy was entered into more than 50 years ago is certainly not sufficient in itself. The association of James H. Ferguson with Hogeman, in representing J. Lewis McMullen, and the fact that no allegation was made that Ferguson was a party to the conspiracy, is also very significant.

"There is no allegation in the bill that the complainant or his father have ever paid any taxes or asserted any claim to any of the lands in question, from the time of the awards given by the arbitrators until the bringing of this suit. * * *

"The allegation of the bill that the arbitrators were deceived, by keeping from them certain decisions rendered and proceedings

had in the Supreme Court of Appeals of West Virginia a few years prior to the arbitration, is not sound. The arbitrators were men of reputation and standing in the profession of law in the state of West Virginia, and to ask it to be believed that they were ignorant of matters so well known that were directly connected with an arbitration in which they were engaged, is not reasonable. Even if the arbitration was wrong and the arbitrators mistaken as to the conclusion reached by them, in the absence of fraud, their finding as approved by the courts is now res adjudicata."

With these findings we are in general accord; that is to say, they in substance correctly set forth what the case is, with the facts and circumstances relied on to support the same, and the law properly applicable thereto.

Sundry assignments of error, 31 in number, were made to the action of the trial court complained of. It will not be necessary to consider these assignments in detail, as they apply only to a few important questions presented in the case, and most of them are mainly in amplification of those actually relied upon.

■ First. Assignments Nos. 11, 12, 14, and 15 present the question whether laches of complainant can be raised by motion to dismiss, or only by pleading or answer. The appellant earnestly insists that the motion to dismiss should not have been sustained, that the defense could only be availed of by proper plea putting in issue the facts, or at least by appropriate demurrer. This contention loses sight of the point at issue, which relates directly to the character of the defense sought to be interposed; that is, that the claim asserted is patently stale upon its face. In such cases, while for a time a demurrer may have been deemed preferable to a motion to dismiss, and, indeed, a plea required, this distinction no longer exists, as, under the new equity rules, a defense of this character must be made by motion to dismiss, which takes the place of a demurrer. Hopkins' New Federal Equity Rules, rule 29, p. 183. Where upon the face of the bill the staleness of the demand is apparent—that is, the claim has remained unasserted for 50 years—the question of its antiquity can always be called to the court's attention, it being, in effect, a challenge to equitable jurisdiction, and relief should be denied, in the absence of valid reasons given by the complainant for the delay. Only a few of the leading authorities maintaining this proposition need be cited. Montgomery's Manual

of Federal Jurisdiction and Procedure (3d Ed.) §§ 774, 776; Foster's Federal Practice, § 367; Daniel's Chancery Pl. & Pr. (6th Ed.) 559; 10 R. C. L. p. 157; Lansdale v. Smith, 106 U. S. 391, 1 S. Ct. 350, 27 L. Ed. 219; Hays v. Port of Seattle, 251 U. S. 233, 40 S. Ct. 125, 64 L. Ed. 243; Phillips v. Piney Coal Co., 53 W. Va. 543, 44 S. E. 774, 97 Am. St. Rep. 1040; Carter v. Price, 85 W. Va. 744, 102 S. E. 685; McMullen v. Matheny, 104 W. Va. 317, 140 S. E. 10.

In Lansdale v. Smith, 106 U. S. 391, 1 S. Ct. 350, 27 L. Ed. 219, supra, a demurrer was sustained upon the ground of laches, and the bill dismissed. Upon considering, on appeal, the propriety of this ruling, Justice Harlan, speaking for the Supreme Court of the United States, after quoting from the English authorities, said:

"Such is, undoubtedly, the established doctrine of this court as announced in many cases. In Maxwell v. Kennedy, supra [8 How. 210, 12 L. Ed. 1051], the court, speaking by Mr. Chief Justice Taney, approved the rule as announced by Lord Redesdale: * * * 'And as the laches of the complainant in asserting his claim is a bar in equity, if that objection is apparent on the bill itself, there can be no good reason for requiring a plea or answer to bring it to the notice of the court.' "

In Hays v. Port of Seattle, 251 U. S. 233, 40 S. Ct. 125, 64 L. Ed. 243, supra, Mr. Justice Pitney, in considering this question, speaking for the Supreme Court, said at pages 238, 239 (40 S. Ct. 127):

"But in the equity practice of the courts of the United States (excepted from the Conformity Act; see Rev. Stats. §§ 913, 914 [28 USCA §§ 723, 724]) laches is a defense that need not be set up by plea or answer. It rests upon the long-established doctrine of courts of equity that their extraordinary relief will not be accorded to one who delays the assertion of his claim for an unreasonable length of time, especially where the delay has led to a change of conditions that would render it unjust to disturb them at his instance. It is for the complainant in his bill to excuse the delay in seeking equitable relief, where there has been such, and, if it be not excused, his laches may be taken advantage of, either by demurrer or upon final hearing"—citing many authorities to support that position.

■ Second. Assignments 13, 16, 18, 19, 25, and 28 present the question of laches; that is to say, that the District Court erred in holding that it appears upon the face of complainant's bill and amended bills, and the ex-

hibits filed therewith, that the complainant and his father had been guilty of laches. We can but feel that the laches of complainant, and of his father in his lifetime, is abundantly apparent. The time that has elapsed between the date of the awards sought to be annulled and the date of the filing of the bill in this cause, seeking to vacate and annul such awards, is undisputed. The awards were dated August 24, 1876, and the bill in this cause was filed on August 11, 1927, a period of more than 50 years intervening, during which time the parties, arbitrators, lawyers, witnesses, and all persons directly interested, have long since passed away. Nothing has been suggested to account satisfactorily for this long delay, nor to warrant this court in intervening in behalf of complainant to disturb and unsettle the rights and titles of others, innocent parties, whose rights have arisen during this long slumber of complainant and his father on their rights. Courts of equity should grant relief only when the best reasons are given for such a long delay, which reasons are wholly lacking here. The complainant's father was a party to, and interested in, several of the suits in which the awards were made; he was in the full vigor of his manhood at the time, and lived for 40 years after the occurrence of the events complained of; he was represented by counsel, and had friends, relatives, and acquaintances, persons of prominence, residing in the section where the land lay, being himself a citizen of the adjoining state of Kentucky, living in Louisville, not very far distant from the city of Charleston, W. Va., and it does not answer to say that he did not know of the events occurring in this important litigation during the long years of his life after the settling of the same adversely to his interests. His conduct was consistent only with his having deliberately slept upon his rights and ceased to take further interest in the subject of the litigation. Foster v. Mansfield, etc., R. Co., 146 U. S. 88, 13 S. Ct. 28, 36 L. Ed. 899; Halstead v. Grinnan, 152 U. S. 412, 14 S. Ct. 641, 38 L. Ed. 495; Atlantic Life Ins. Co. v. Rowland, 22 F.(2d) 126 (C. C. A. 4th Cir.); 17 R. C. L. § 105; Smith v. Clay, 3 Bro. C. C. 638; 21 C. J. § 229.

In Halstead v. Grinnan, 152 U. S. 412, at page 416, 14 S. Ct. 641, 643 (38 L. Ed. 495), supra, Mr. Justice Brewer, speaking for the Supreme Court of the United States, said:

"The plaintiff, by this suit, invoked the aid of a court of equity to set aside a survey which had stood unchallenged for over 25 years. Such a long delay suggests laches, and a careful examination of the testimony satisfies us that the Circuit Court did not err in sustaining this defense. The defense itself is one which, wisely administered, is of great public utility, in that it prevents the breaking up of relations and situations long acquiesced in, and thus induces confidence in the stability of what is, and a willingness to improve property in possession, and at the same time it certainly works in furtherance of justice, for so strong is the desire of every man to have the full enjoyment of all that is his that, when a party comes into court and asserts that he has been for many years the owner of certain rights, of whose existence he has had full knowledge, and yet has never attempted to enforce them, there is a strong persuasion that, if all the facts were known, it would be found that his alleged rights either never existed, or had long since ceased. We have had before us lately several cases in which this defense has been presented, and in which the rules determining it have been fully stated and its value clearly demonstrated"—citing authorities in support thereof.

In Foster v. Mansfield, etc., R. Co., 146 U. S. 88, at page 99, 13 S. Ct. 28, 32 (36 L. Ed. 899); supra, Mr. Justice Brown, speaking for the Supreme Court, said:

"The defense of want of knowledge on the part of one charged with laches is one easily made, easy to prove by his own oath, and hard to disprove, and hence the tendency of courts in recent years has been to hold the plaintiff to a rigid compliance with the law which demands, not only that he should have been ignorant of the fraud, but that he should have used reasonable diligence to have informed himself of all the facts."

In Atlantic Life Ins. Co. v. Rowland (C. C. A.) 22 F.(2d) 126, supra, this court said, at page 129:

"As to what delay or negligence will constitute laches and defeat recovery must depend on the circumstances of each case. 7 Enc. U. S. C. C. R. 798, and cases there cited. A complainant in a suit in equity, to relieve himself of a charge of laches, must not only have been diligent in asserting his rights after they were discovered by him, but he must have exercised due diligence to inform himself. And he is properly chargeable with all the knowledge that due diligence would have disclosed to him."

10 R. C. L. "Equity," § 142, supra, states the doctrine as to laches as follows, at pages 395, 396:

"It is a familiar doctrine that, apart from any question of statutory limitation, courts of equity will discourage laches and delay in the enforcement of rights. The general principle is that nothing can call forth the court

of chancery into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive and does nothing. The doctrine is founded principally on the equity maxims, 'he who seeks equity must do equity,' 'he who comes into equity must come with clean hands,' and 'the law serves the vigilant, and not those who sleep over their rights,' and is based on considerations of public policy. Its object is in general to exact of the complainant fair dealing with his adversary, and the rule was adopted largely because after great lapse of time, from death of parties, loss of papers, death of witnesses, change of title, intervention of equities, or other causes there is danger of doing injustice, and there can be no longer a safe determination of the controversy"— with authorities cited.

Third. Assignments Nos. 20, 21, 22, 23, 24, 26, 27, 29, and 30 present the question whether the averments of the bills, when read in the light of exhibits therewith, upon which the charges of fraud on the part of Hale, Hogeman, Lewis, and Miller, and mistakes on the part of the arbitrators, are founded, are sufficient. We can but feel that the averments of fraudulent conspiracy between the parties mentioned, and of misconduct on the part of the arbitrators, are not made with the degree of certainty, particularity, and detail that should be given respecting grave and serious matters of the character and importance involved. The details and particulars of the alleged conspiracy and fraud should be gone into certainly to a greater extent than is done. Just what the alleged fraud and conspiracy consisted of, the supposed purpose and intent thereof, and what resulted therefrom, ought at least to be so stated that the parties charged therewith, and the interests affected thereby, might be reasonably advised as to what was required of them. The exhibits filed with the bill and amended bills, which, it is claimed, support the grave charges made, do not, in our judgment, support the view contended for, but tend directly to the contrary, as well in respect to the conspiracy and fraud charged against the individuals mentioned as to the conduct of the arbitrators sought to be impugned, and particularly as to their having been deceived and misled by, and having made improper awards because of, the withholding of true maps, surveys, and other documents, and the fraudulent introduction in their stead of other and untrue maps and surveys relating to the property in question.

Taking into account the fact that the arbitrators were lawyers of reputation in their profession and men of good standing in their community, the large number of suits being arbitrated, the important interests involved, and that the trial lasted some 30 days, with a number of prominent counsel engaged therein, we can but feel that it would have been next to impossible to have thus imposed upon the arbitrators as is claimed, and when it is remembered that their action, after full notice to all parties concerned, promptly received the approval and sanction of the circuit court of Kanawha County, West Virginia, and that review thereof was refused by the appellate court of the state of West Virginia, which action has remained unchallenged, save by this suit, until the present time (Nelson V. McMullen v. Pritt, 103 W. Va. 585, 138 S. E. 384), it seems to us that what was then done should remain firm and stable, and binding between the parties, and should not be now disturbed and unsettled upon the case made in this bill.

Fourth. The complainant is not only chargeable with his own laches in the assertion of the cause of action in suit, but also with the laches of his father, under whom he claims; that is, the conduct and delay of both father and son must be considered. 17 R. C. L. § 352, p. 976; Gildersleeve v. New Mexico Mining Co., 161 U. S. 573, 16 S. Ct. 663, 40 L. Ed. 812). Of course, cases might arise when circumstances would tend to account for, and in a measure explain, the delay that has occurred, but not, as here, where the ancestor of complainant, who was an active participant in the litigation involved, lived 42 years after the occurrences complained of, in an adjoining state and nearby section, and where it appears that he lived and died without intimation or suggestion of the troubles of which his son, the complainant, complains, and the son seeks to excuse his father's inaction because of the alleged ignorance of his father as to the facts, this cannot be accepted, as it will not be assumed that the matters set up by the son, if true, would not have been known or learned of by the father in the exercise of any sort of diligence on his part during the many years that he lived after the wrongs of which complaint is made were committed.

The conclusion reached by us is that the decree of the District Court is plainly right, and should be affirmed, at the costs of the appellant.

Affirmed.